UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICARDO ENRIQUE VEGA,<br><br>Defendant. | Case No.: 1:09-cr-00335 JLT<br><br>ORDER ON DEFENDANT'S MOTIONS TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. §§ 3582(c)(1)(A), (c)(2)<br><br>(Docs. 89, 110, 124) |

Before the Court are Ricardo Enrique Vega's unopposed motions for a sentence reduction pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and (c)(2). (Docs. 89, 110, 124; *see also* Docs. 125, 127.) Mr. Vega seeks compassionate release based on intervening changes in law and sentencing policy that have substantially lowered the penalties applicable to his offense. For the reasons set forth below, the Court finds that Mr. Vega is eligible for relief under § 3582(c)(1)(A); that extraordinary and compelling reasons warrant a sentence reduction; and that a sentence of time served is consistent with the factors set forth in 18 U.S.C. § 3553(a).

**I.     Background**

On August 27, 2009, Mr. Vega was charged by indictment with one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. (Doc. 7.) Following a jury trial, Mr. Vega was found guilty of the charge.

Mr. Vega's base offense level was 36 based on the quantity of drugs involved in the

offense, which the sentencing judge reduced by 2 points based on Mr. Vega's acceptance of responsibility, for a total offense level was 34. (Presentence Investigation Report (PSR) ¶¶ 18-25; Sentencing Tr., Doc. 61 at 10:1-13.) Mr. Vega was assigned 2 criminal history points based on prior convictions, and 2 status points under the prior version of U.S.S.G. § 4A1.1(d), for a total criminal history score of 4. (PSR ¶¶ 27-37.) This placed him in criminal history category III, which, when combined with his total offense level of 34, resulted in a guideline sentencing range of 188 to 235 months. (PSR ¶ 37; Sentencing Tr. at 10:19-23.) However, prior to trial, the government filed an information pursuant to 21 U.S.C. §§ 851 and 841(b)(1)(A), indicating its intent to seek enhanced penalties based on one of Mr. Vega's prior convictions.[1] (Doc. 32.) Consequently, Mr. Vega's conviction carried a mandatory minimum term of 240 months, which the Court was bound by when imposing his sentence. 21 U.S.C. § 841(b)(1)(A). (Sentencing Tr. at 10:24-25, 11:1-14.)

      Mr. Vega is currently incarcerated at Fort Dix Federal Correctional Institution with a projected release date of November 9, 2025. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Oct. 8, 2025).

      Mr. Vega has filed two motions for sentence reduction pursuant to 18 U.S.C. §§ 3582(c)(2) and (c)(1)(A), respectively. (Docs. 89, 110.) On May 1, 2025, the Court appointed substitute counsel to represent Mr. Vega in this matter. (Doc. 115.) On August 25, 2025, counsel filed a supplemental motion on Mr. Vega's behalf. (Doc. 124.) In light of the government's statement of non-opposition to the motions, (Doc. 125), the Court ordered the parties to file a stipulation to reduce Mr. Vega's sentence as requested. (Doc. 126.)

      On September 25, 2025, the parties filed a stipulation reflecting their joint position that Mr. Vega's sentence should be reduced. (Doc. 127.) As the stipulation did not set forth the underlying factual or legal bases for the requested relief, the Court has independently reviewed the record and applicable authorities to ensure the requested reduction is warranted.

---

[1] According to the government's § 851 Information, "[t]he felony conviction obtained by [Mr. Vega] on or about November 17, 1998, in the California Superior Court of Los Angeles County, for California Health and Safety (H&S) Code, Section 11350(a), possession of a controlled substance, a felony." (Doc. 32 at 1.)

2

**II.     Sentence Reductions under 18 U.S.C. § 3582(c)(2)**

  **A.     Legal Standard**

  In general, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(2). In such a case, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

  However, the Sentencing Commission clarified that "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if: (i) none of the amendments listed in subsection (d) is applicable to the defendant; or (ii) an amendment listed in subsection (d) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.,* a statutory mandatory minimum term of imprisonment)." U.S. Sent'g Guidelines Manual (U.S.S.G.) § 1B1.10, cmt. n.1(A) (U.S. Sent'g Comm'n 2023); *see also* U.S.S.G. § 1B1.10(a)(2) (Nov. 2023).

  **B.     "Status Point" Provision of Amendment 821**

  Effective November 1, 2023, the U.S. Sentencing Commission amended two provisions of the Sentencing Guidelines—"parts A and B, subpart 1"—which applied retroactively. *See* U.S.S.G. § 1B1.10(d) (2023) ("Amendment 821"); *see also* U.S.S.G. § 1B1.10(e)(2). Part A of Amendment 821 amended § 4A1.1(d) by reducing the number of "status points" assigned to certain defendants who committed their offense while under a criminal justice sentence, thereby lowering the impact on the defendant's criminal history. *See* U.S.S.G. § 1B1.10, cmt. n.7. The amended provision instructs the sentencing judge to:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1(e) (Nov. 1, 2023). Therefore, under Amendment 821, a defendant who presents 7 or more criminal history points now receives 1 status point, instead of 2, for an offense committed while under a criminal justice sentence, and a defendant who presents 6 or fewer criminal history points now receives no status points. *Compare* U.S.S.G. § 4A1.1(d) (prior to Nov. 1, 2023), *with* U.S.S.G. § 4A1.1(e) (Nov. 1, 2023).

Because Defendant was assigned only 2 criminal history points, he would not receive any status points under the amended status points provision. This would result in a criminal history score of 2. (*See* PSR ¶¶ 35-37.) According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of 2 places Mr. Vega in criminal history category II, rather than category III.

In addition, the Court observes that Amendment 782 to the Sentencing Guidelines, commonly referred to a the "Drugs Minus Two" amendment, appears to apply to Mr. Vega's case.[2] Prior to Amendment 782, the quantity of "Ice"[3] attributable to Mr. Vega (916.7 grams), equated to a base offense level of 36. (*See* PSR ¶ 17.) Under the amended Drug Quantity Table, this quantity equates to a base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(2) (Nov. 2014) ("at least 500 G but less than 1.5 KG of 'Ice'"). Therefore, after application of Amendments 782 and 821, a total offense level of 34 and criminal history category of II would lower the sentencing range applicable to Mr. Vega to 135 to 168 months. *See* U.S.S.G. Ch. 5, Pt. A. However, this does not entitle Mr. Vega to relief.

---

[2] "Amendment 782 to the United States Sentencing Guidelines, colloquially known as the 'Drugs Minus Two' amendment, became effective on November 1, 2014. The Amendment revised the guidelines applicable to drug-trafficking offenses by reducing the base offense levels assigned to some, but not all, of the drug and chemical quantities listed in the Drug Quantities Tables at U.S.S.G. §§ 2D1.1 and 2D1.11." *United States v. Davtyan*, 2015 WL 4934180, at *2 (C.D. Cal. Aug. 18, 2015) (citing U.S.S.G. app. C, amend. 782 (2014); U.S.S.G. § 1B1.10(d), (e)(1) (making Amendment 782 apply retroactively to previously sentenced defendants)).

[3] According to Note C of the Drug Quantity Table, "Ice" is defined as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity."

A reduction in Mr. Vega's sentence is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with U.S.S.G. § 1B1.10 because Amendments 782 and 821, while applicable to Mr. Vega, "do[ ] not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.,* a statutory mandatory minimum term of imprisonment)." U.S.S.G. § 1B1.10, cmt. n.1(A). In other words, because Mr. Vega faced a statutory mandatory minimum sentence that was higher than the otherwise applicable guideline range, the statute controls. *See* U.S.S.G. § 5G1.1(b).

Similarly, insofar as counsel relies on § 401 of the First Step Act of 2018—the provision that narrowed the recidivist enhancements in 21 U.S.C. § 841(b)(1)—those amendments are statutory rather than Guidelines amendments and thus are not among the amendments listed in § 1B1.10(d) that can support relief under § 3582(c)(2). *See* U.S.S.G. § 1B1.10, cmt. n.1(A); *see also* First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21; *United States v. Paulk*, 569 F.3d 1094, 1095 (9th Cir. 2009), *as amended* (Aug. 6, 2009) (finding defendant was "not entitled to a reduction because his sentence was not 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' 18 U.S.C. § 3582(c)(2), but rather was based on the statutory mandatory minimum under 21 U.S.C. § 841"). Thus, Mr. Vega is not entitled to relief pursuant to 18 U.S.C. § 3582(c)(2).

**III.     Sentence Reductions under 18 U.S.C. § 3582(c)(1)(A)**

Mr. Vega also moves for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), arguing that the unusually long 240-month sentence he received in 2010 was based on a 20-year statutory mandatory minimum that no longer applies, which creates a disparity and constitutes an extraordinary and compelling reason for relief under U.S.S.G. § 1B1.13(b)(6).

After a defendant has exhausted his administrative remedies, 18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a sentence previously imposed if: (1) the court finds extraordinary and compelling reasons warranting relief; (2) a reduction is consistent with the policy statement in U.S.S.G. § 1B1.13; and (3) the court has considered the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022); *United States v. Wright*, 46 F.4th 938, 944-46 (9th Cir. 2022).

**A.     Administrative Exhaustion**

Section 3582(c) permits a defendant to apply to a federal district court for a sentence modification only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[4]

Counsel for Mr. Vega claims that administrative requests were submitted to the warden of Mr. Vega's BOP facility on October 10, 2024 and August 14, 2025. (Doc. 124 at 15, citing Doc. 124-1 at 4-6.) Because more than 30 days have passed, Mr. Vega asserts he has exhausted his administrative remedies. (*See id.*) The government does not contest that Mr. Vega has met the exhaustion requirement under § 3582(c)(1)(A). Thus, the Court will address the merits of Mr. Vega's motion.[5]

**B.     Extraordinary and Compelling Reasons**

To be eligible for relief, a defendant must show, and a court must consider, "extraordinary and compelling reasons" according to the current version of U.S.S.G. § 1B1.13. *See United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. 2024), *reconsideration denied*, 2024 WL 2048643 (D. Or. May 6, 2024); *see also United States v. Neal*, 2024 WL 1886476, at *2 n.2 (E.D. Cal. Apr. 30, 2024).[6]

---

[4] If the BOP denies a defendant's request within 30 days of receipt of such a request, to exhaust his administrative remedies, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies the defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, the defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[5] *See, e.g., United States v. Velasco*, 2024 WL 245638, at *2 (E.D. Cal. Jan. 23, 2024) ("Since Velasco's request has been denied, he has exhausted his administrative remedies and is permitted to file this motion."); *United States v. Portillo*, 2023 WL 5955999, at *1 (E.D. Cal. Sept. 13, 2023) (finding that because more than 30 days had elapsed since defendant filed his request to the warden for compassionate release, he satisfied the exhaustion requirement).

[6] Prior to the November 2023 amendments, the Ninth Circuit held that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). However, the Ninth Circuit recently held that in 2023, "having regained a quorum, the Commission revised § 1B1.13 to govern motions by a defendant." *United States v. Bryant*, 144 F.4th 1119, 1124 (9th

The Sentencing Commission's current policy statement expressly contemplates consideration of certain non-retroactive changes in sentencing law as part of the "extraordinary and compelling reasons" inquiry. Under U.S.S.G. § 1B1.13(b)(6) (effective Nov. 1, 2023), a court may consider, as an extraordinary and compelling reason, a defendant's non-retroactive change in sentencing law (*e.g.*, an intervening statutory amendment), if (1) the defendant received an "unusually long sentence"; (2) the defendant has served at least 10 years of that sentence; and (3) a change in the law would produce a gross disparity between the sentence being served and the sentence likely to be imposed today.[7] There is no dispute that a 20-year sentence is "unusually long" and that Mr. Vega has served over 10 years of that sentence. *See United States v. Landeros-Valdez*, 2025 WL 70124, at *3 (D. Idaho Jan. 10, 2025) (finding 20-year sentence "unusually long" where, setting aside mandatory minimum, term was 6 years above low end of guideline range and 2.5 years above high end).[8] The remaining question is whether a "gross disparity" exists.

Pertinent to Mr. Vega's case, section 401 of the First Step Act narrowed the scope of prior convictions that trigger enhanced mandatory minimums under 21 U.S.C. § 841(b)(1)(A) by replacing the former "felony drug offense" standard with the stricter "serious drug felony"

---

Cir. 2025) (citing Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,256 (May 3, 2023)). "Now, courts are 'bound by' § 1B1.13 in deciding all compassionate release motions under § 3582(c)(1)(A)." *Id.* (citing *Chen*, 48 F.4th at 1098; *Concepcion v. United States*, 597 U.S. 481, 495 (2022)). The Court clarified that "*Aruda* has therefore been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions to § 1B1.13." *Id*. n.1.

[7] Before U.S.S.G. § 1B1.13(b)(6) was added, the Ninth Circuit held that courts may consider such changes in law based on the wide discretion afforded by 18 U.S.C. § 3582(c)(1)(A). *See Chen*, 48 F.4th at 1099 (district court erred by refusing to consider non-retroactive § 924(c) changes when evaluating compassionate release); *Wright*, 46 F.4th at 944-46 (district courts have broad discretion under § 3582(c)(1)(A) to consider "any extraordinary and compelling reason" a defendant raises). In its commentary to the 2023 amendment to § 1B1.13, the Sentencing Commission acknowledged the practice amongst district courts of considering non-retroactive changes in sentencing law as extraordinary and compelling reasons, explaining that "[s]ubsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." Notice, Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254-01, 282558 (May 3, 2023).

[8] Mr. Vega has served more than 16 years in BOP custody—over 90% of his statutory term. (*See* Doc. 124-1 at 14.) His projected release date is November 9, 2025, after application of good time and FSA credits. (*Id.*)

7

requirement. *See* Pub. L. No. 115-391, § 401(a), 132 Stat. 5194, 5220-21. Prior to 2018, any defendant who had a prior "felony drug offense"[9] was subject to an enhanced mandatory minimum for a subsequent violation of 21 U.S.C. § 841(a). *See* 21 U.S.C. § 841(b)(1)(A) (2010).

After the FSA, however, a defendant is not subject to an enhanced mandatory minimum sentence unless he has a prior conviction for a "serious drug felony," defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance … for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii). *See also* 21 U.S.C. §§ 802(58); 132 Stat. at 5220-21 (amending 21 U.S.C. § 841(b)(1)). However, these changes were not made retroactive. *See* § 401(c), 132 Stat. at 5221.

Mr. Vega's 1998 conviction was—and remains—punishable by no more than one year in custody. *Compare* Cal. Health & Safety Code § 11350(b) (Mar. 29, 2000) *with id.* § 11350(a) (Jan. 1, 2018).[10] (*See* PSR ¶ 27; Doc. 32 at 1; Doc. 124 at 11.) Therefore, although Mr. Vega's prior drug conviction qualified as a "felony drug offense" when he was sentenced in 2010, it is not a "serious drug felony" under the FSA. Thus, Mr. Vega correctly asserts that without his prior drug conviction qualifying as "serious," he would not be subject to an enhancement or a 20-year mandatory minimum for his conviction in this case.[11]

More significantly, the record shows that the sentencing judge would have imposed a low-end guideline term but for the 20-year statutory floor. District Judge Wanger stated the following at the sentencing hearing:

> The government did file an 851 prior and the Court although Fifth

---

[9] A "felony drug offense" is one "that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

[10] The statute provides for larger sentences if the defendant is a sex offender or has multiple prior serious or violent felony convictions, neither of which are applicable here. *See* Cal. Health & Safety Code § 11350(a). In any event, the maximum term in no case amounts to 10 years.

[11] Even if the post-FSA enhancement under 21 U.S.C. § 841(b)(1)(A) applied to Mr. Vega, he would only face a 15-year statutory minimum. The difference between the mandatory minimum in 2010 (240 months) and the 15-year statutory minimum under § 401 (180 months) is a 60-month disparity, which itself warrants consideration. *See United States v. Robinson*, 729 F. Supp. 3d 242, 246 (D.R.I. 2024) (acknowledging five-year differential resulting from § 401 "is a gross disparity meriting consideration of a sentence reduction").

8

> and Sixth Amendment objections are made, the Court is bound by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which essentially validates the prior narcotics conviction, when alleged, does invoke the mandatory minimum sentence of 240 months, and although the Court would sentence Mr. Vega and is satisfied that in accordance with his description of being a hardworking man all his life, at least for 19 years, and he saw the opportunity to make some money, ***the Court would sentence him to the 188 months, which would be an appropriate sentence were it not for the mandatory minimum***.
>
> The Court has no legal discretion once the conviction is more than five years old, it's not challengeable, and under the provisions of Title 21, the Court is without discretion and bound by the statutory mandatory minimum of 240 months.

(Sentencing Tr. at 10:24-25, 11:1-14, emphasis added.) With the benefit of this information, the Court is satisfied that Mr. Vega would have received a comparable low-end term, which, under Amendments 782 and 821, would amount to 135 months. This 105-month disparity (approximately 8.75 years) supports the conclusion that Mr. Vega's sentence is no longer proportional considering the changed legal landscape.

Other district courts—both before and after the promulgation of § 1B1.13(b)(6)—have recognized that substantial, non-retroactive sentencing disparities can constitute extraordinary and compelling reasons under § 3582(c)(1)(A) and have found gaps comparable to the one here to be sufficiently "gross." *See, e.g., United States v. Nava*, 2023 WL 8281596, at *3 (D. Mont. Nov. 30, 2023), (finding 112- to 142-month disparity resulting from Amendment 782, coupled with average term of 107 months currently imposed for same offense, to be "gross" under § 1B1.13(b)(6)); *United States v. Patterson*, 2024 WL 4872784, at *2 (S.D.N.Y. Nov. 21, 2024) (120-month disparity); *United States v. Maddox*, 2025 WL 2318734, at *3 (E.D. Cal. Aug. 12, 2025) (147-190 month disparity). Lesser discrepancies have likewise satisfied § 1B1.13(b)(6). *See, e.g., United States v. Robinson*, 729 F. Supp. 3d 242, 246 (D.R.I. 2024) (finding difference between 20-year mandatory minimum and 15-year mandatory minimum—60 months—a gross disparity); *United States v. Monk*, 2024 WL 3936351, at *5 (S.D.N.Y. Aug. 26, 2024) (same); *United States v. Banks*, 2022 WL 220638, at *4 (W.D. Va. Jan. 25, 2022), *aff'd*, 2023 WL 3074202 (4th Cir. Apr. 25, 2023) (88-month sentencing disparity; decided before amendment); *United States v. Adley*, 2024 WL 1961484, at *5 (S.D. Fla. May 3, 2024) (65-month disparity); *United States v. Miller*, 2023 WL 7065545, at *4 (D.S.C. Oct. 26, 2023) (30-month disparity).

In Mr. Vega's case, the combined impact of Amendments 782 and 821 and the First Step Act's revision to § 841(b)(1)(A) yields a disparity of nearly nine years—well above both the guideline range that would apply today, and the sentences typically imposed for comparable conduct. Between 2020 and 2024, the average term of imprisonment for defendants sentenced pursuant to U.S.S.G. § 2D1.1 for methamphetamine, with a total offense level of 32 and a criminal history category of II, was 108 months. *See* U.S. Sentencing Comm'n, Judiciary Sentencing Information, https://jsin.ussc.gov (last accessed Oct. 8, 2025). This data underscores the disparity between Mr. Vega's 240-month sentence and the sentence he would likely receive today—a difference the Court finds sufficiently "gross" under U.S.S.G. § 1B1.13(b)(6). *Nava*, 2023 WL 8281596, at *3.

This disparity, together with the non-retroactive statutory change, Mr. Vega's 16 years of completed custody, his record of rehabilitation, his minimal remaining term, and the government's non-opposition, supports the conclusion that extraordinary and compelling reasons warrant a reduction.

### C.     Consideration of § 3553(a) Factors

Even where extraordinary and compelling reasons are present, the Court must ensure that any reduction is consistent with the factors set forth in § 3553(a) and that the sentence remains "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public;

(3) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment;

(4) the kinds of sentences available;

(5) the applicable guideline range;

1  (6) any pertinent policy statement issued by the Sentencing Commission;
2  (7) the need to avoid unwarranted sentencing disparities among similarly
3       situated defendants; and
4  (8) the need to provide restitution to any victims.

*Id.*

The Court has carefully considered the factors set forth in 18 U.S.C. § 3553(a) and concludes that a reduction to time served is consistent with the purposes of sentencing. Mr. Vega has served nearly the entirety of his 240-month custodial term and is projected for release in approximately one month. The time he has already served exceeds both the 135- to 168-month range that would apply under current law and the 188-month sentence the Court would have imposed at the time of sentencing absent the mandatory minimum. The Court also notes that Mr. Vega faces immigration consequences upon release, further mitigating any risk to the community and ensuring continued accountability outside of BOP custody. Continued incarceration would therefore be greater than necessary to accomplish the goals of sentencing.

The underlying offense—possession with intent to distribute methamphetamine—was serious. While the Presentence Report noted that Mr. Vega had referenced possessing an AK-47 and a .30-30 rifle during conversations with an undercover agent, no firearms were ever recovered, and there was no evidence that weapons were involved in the offense conduct. Overall, the record reflects that Mr. Vega's conduct was non-violent and did not involve aggravating circumstances. At sentencing, the Court described Mr. Vega as a "hard-working man" who "saw the opportunity to make some money," not as a chronic or violent offender. (Sentencing Tr. at 11:7-8.)

Mr. Vega has also demonstrated significant rehabilitative progress during his lengthy term of imprisonment. He has completed numerous educational, vocational, and self-improvement courses; maintained steady institutional employment; and has remained discipline-free for several years. (*See* Doc. 124-1 at 8-18.) He has a low risk of recidivism. (*Id.* at 10.) These achievements reflect accountability and motivation toward reentry. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (post-sentencing rehabilitation is highly relevant under

11

§ 3553(a)).

Finally, the government does not oppose Mr. Vega's motion. That non-opposition, along with the disparity created by Amendments 782 and 821, the now-non-applicable mandatory minimum, Mr. Vega's lengthy term already served, his sustained rehabilitation, and his anticipated removal from the United States following release, collectively supports a reduction.

On balance, the Court concludes that a reduction to time served appropriately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of Mr. Vega. 18 U.S.C. § 3553(a).

### IV.    Conclusion and Order

Having considered the totality of the record, the Court finds that Mr. Vega's grossly disparate custodial sentence presents an extraordinary and compelling reason to reduce his term of imprisonment, with cumulative weight added thereto based on his rehabilitation while in BOP custody. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b)(6), 18 U.S.C. § 3553(a).

Thus, the Court **ORDERS**:

1. Defendant Ricardo Enrique Vega's motions for a reduction in sentence (Docs. 89, 110, 124) are **GRANTED** insofar as they seek relief pursuant to 18 U.S.C. § 3582(c)(1)(A) and **DENIED** to the extent they seek relief pursuant to 18 U.S.C. § 3582(c)(2), as discussed above.
2. The Court modifies Mr. Vega's previously imposed custodial sentence of 240 months on Count of the indictment to a term of **time served**, effective 10 days from the date of the amended judgment.[12]
3. All other terms and provisions of the original judgment shall remain in effect.
4. The Clerk of the Court shall forthwith prepare an amended judgment reflecting the above reduction in sentence and shall serve certified copies of the amended

---

[12] The government requests that Mr. Vega "be released ten days after the issuance of the order. This would give BOP sufficient time to arrange for Mr. Vega's release to [U.S. Immigration and Customs Enforcement] as he currently has an immigration detainer." (Doc. 125 at 1.) Mr. Vega has no objection to that request. (Doc. 127.)

judgment on the United States Bureau of Prisons and the United States Probation Office.

5. If Mr. Vega is not taken into immigration custody upon release, he shall report to the United States Probation Office within **72 hours** from the Bureau of Prisons.

IT IS SO ORDERED.

Dated:   **October 9, 2025**

UNITED STATES DISTRICT JUDGE